(No. 29434.—

MATH IGLER'S CASINO, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(AUGUST FAVILA, Defendant in Error.)

*Opinion filed September 18, 1946.*

Angerstein & Angerstein, (Thomas C. Angerstein, George W. Angerstein, Charles Wolff, William L. Daily, and G. E. Winders, of counsel,) all of Chicago, for plaintiff in error.

Sol Andrews, and Abraham B. Litow, both of Chicago, for defendant in error.

Mr. Justice Wilson delivered the opinion of the court:

August Favila filed an application with the Industrial Commission for the adjustment of compensation, charging that he suffered an accidental injury when a fellow employee accidentally struck him in the eye with a soup ladle

while employed by Math Igler's Casino, Inc. An arbitrator awarded compensation, the Industrial Commission affirmed the award, and the circuit court of Cook county confirmed the decision of the commission. We have granted the employer's petition for a writ of error, and the record is submitted for a further review.

The facts are not in dispute. On June 11, 1944, Favila was an employee in the kitchen of a restaurant known as Math Igler's Casino, in Chicago, and owned and operated by Math Igler's Casino, Inc. Joe Avila was employed in the kitchen of the same restaurant. On the day named, Favila appeared at his place of employment about twelve o'clock noon. Upon entering the kitchen he greeted the other employees. Avila answered, "Hello, Gus," in a friendly manner. Favila repaired to the basement where he changed from his street clothes into his uniform, returned to the kitchen, went to a coffee urn, and proceeded to make coffee for himself and some of the other employees. Avila, who was peeling potatoes at a place some thirty feet distant from the coffee urn, asked Favila why he was working that day, and the latter answered, "Ask the chef." According to Favila, when the coffee was brewed, he and other employees, including the waitresses, drank the coffee and ate some rolls in leisurely fashion. Avila did not join the group but continued peeling potatoes. On a shelf above the sink where he was working there was a long wooden soup ladle. After Favila had finished his repast, he went to an icebox located about eighteen feet from Avila, still engaged in the process of peeling potatoes. Avila had no work or duties to perform around this icebox. Favila opened the door of the refrigerator and, while standing in a stooped over position, Avila, armed with the soup ladle, walked quickly toward him and, without saying a word, struck Favila with the ladle in the region of the left eye, knocking him to the floor. The injuries suffered caused Favila to lose the vision in his left eye permanently. After

striking Favila, Avila, again without saying a word, walked
to the back of the kitchen and went downstairs. The chef,
Alexander Christ, summoned the police, but before the
officers arrived, Avila, now dressed in his street clothes,
and without comment to anyone, departed. From the tes-
timony of Favila, it appears that he had known Avila for
more than two years prior to the day of the assault; that
they were good friends; that Avila's query as to why he
was working on the day of the attack was made in a
friendly way, and that his reply was likewise in a friendly
tone. Favila testified, further, that Avila's assault upon
him came as a complete surprise; that he knew of no rea-
son why Avila should strike him; that he had never signed
a complaint against Avila; that he had later returned to
the restaurant several times, but that Avila was not pres-
ent and, to his knowledge, had never been back to work
at the restaurant. The physical details and attending cir-
cumstances of Avila's assault upon Favila are also con-
tained in a statement of Christ, the chef. His statement,
admitted in evidence by stipulation, amply corroborates
Favila's testimony.

The employer, the plaintiff in error, contends that the
assault upon Favila, the defendant in error, had no connec-
tion whatever with the work in which he and his assailant
were engaged and that, accordingly, the injuries sustained
in the assault are not within the contemplation of the Work-
men's Compensation Act. Defendant in error directs at-
tention to what he describes as a salient factor. Referring
to the conversation previously narrated between Avila and
himself, he insists, "This particular conversation is the
whole structure of this case because we consider that it
was this conversation that was the only cause that brought
about the injuries." Upon this basis, he contends that an
injury arises out of the employment if it can be seen to
have followed the natural incident of the work and to have
been contemplated by a reasonable person, familiar with

the whole situation, as a result of the exposure occasioned by the nature of the employment.

Since the facts are uncontroverted, the decisive issue as to whether the injuries of the defendant in error arose out of and in the course of his employment is a question of law. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484; *Farley* v. *Industrial Com.* 378 Ill. 234.) The decision of the Industrial Commission and the judgment of the circuit court upon the question of law presented are not binding upon this court. (*Ervin* v. *Industrial Com.* 364 Ill. 56.) The Workmen's Compensation Act requires that an accidental injury, to be compensable, must arise out of as well as in the course of employment, the phrases "arising out of" and "in the course of" the employment, being used conjunctively in the statute. (*Borgerson* v. *Industrial Com.* 368 Ill. 188.) Favila's injury was received in the course of his employment. To be entitled to compensation, the burden rested upon him to prove further that his injury arose out of his employment. The words "arising out of" refer to the origin or cause of the accident and are descriptive of its character. The mere fact that an employee is present at the place of injury because of his employment is insufficient unless the injury itself is a result of some risk of the employment. In short, an injury arises out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resultant injury. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484.) Conversely, it is settled that if an injury is caused by reason of some factor unrelated to the nature of the employment, it does not arise out of the employment, and an injury not fairly traceable to the employment as a contributing, proximate cause, and which comes from a hazard to which the employee would have been equally exposed apart from the employment, does not arise

out of his employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public. (*Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *Great American Indemnity Co.* v. *Industrial Com.* 367 Ill. 241; *Spiller* v. *Industrial Com.* 331 Ill. 401; *Boorde* v. *Industrial Com.* 310 Ill. 62; *Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) An injury to an employee in a fight with another employee arising out of a quarrel concerning the employer's work in which they were engaged arises out of the employment, (*Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31,) and if the evidence tends to disclose that the injured employee was not responsible for the assault, an award for compensation will be sustained. (*Scholl* v. *Industrial Com.* 366 Ill. 588; *Franklin Coal and Coke Co.* v. *Industrial Com.* 322 Ill. 23; *Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 548; *United Disposal and Recovery Co.* v. *Industrial Com.* 291 Ill. 480; *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com.* 288 Ill. 126; *Swift & Co.* v. *Industrial Com.* 287 Ill. 564.) Conversely, where an employee sustains an injury in a fight with another employee which is a purely personal matter not growing out of a quarrel over the manner of conducting the employer's business, the injury suffered does not arise out of the employment. (*Jones Foundry and Machine Co.* v. *Industrial Com.* 312 Ill. 27; *City of Chicago* v. *Industrial Com.* 292 Ill. 406; *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459; *Holden* v. *Premier Waterproof & Rubber Co. Ltd.* 23 B.W.C.C. 460.) In short, the precise question presented is whether Favila's injury resulted from an altercation arising out of matters incident to his work and the manner of conducting his employer's business or, instead, was the result of purely personal differences between his assailant, Avila, and himself.

*City of Chicago* v. *Industrial Com.* 292 Ill. 406, closely parallels the present case. There, Gallagher, an employee of the city of Chicago, was loading sand from a freight

car into wagons near the municipal pier in the course of his employment. He got down from the car and went to a hydrant to obtain a can of drinking water, with which he returned to the car. A fellow employee, Ramsey, who was working on an adjoining car, asked Gallagher for a drink. Gallagher told him to get his own water. Ramsey cursed Gallagher and told him to climb on the car and he would knock his head. Gallagher did not reply, but after standing there for a few minutes, climbed upon the car to proceed with his work. Ramsey again cursed him and struck him a fatal blow on the head with a shovel. Reversing an award for compensation, this court pertinently observed: "The felonious assault which was made upon the deceased was without any excuse. It had no more connection with the work in which he was engaged than if Ramsey had been a loiterer on the street and had asked for a drink from Gallagher's can. There was no causal relation between the work and the assault. The affair was purely personal, with no reference to the employment. Ramsey and Gallagher happened to be at the same place because of their employment, but an injury done by one to the other on account of some purely personal grudge which this proximity gave an opportunity to inflict was not a result of the employment. There was no causal connection between the conditions under which the work was to be done and the injury. The injury was not incidental to the character of the business, but the deceased would have been equally exposed to it entirely apart from his employment."

*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459, is also analagous. There, Brill was employed as a waiter on the day he was fatally injured in a fight with a fellow employee, Lee. This court said: "There is no proof that the difficulty between Lee and Brill had its origin in or in connection with their employment. The proof is as consistent with the theory that it had no such origin or con-

nection but resulted from a previous feud or ill-feeling between the two men, as it is with the theory that the quarrel or altercation grew out of the manner of conducting the business in which they were employed."

In *Jones Foundry and Machine Co.* v. *Industrial Com.* 312 Ill. 27, Borgstrom, an employee, was shot and killed at his place of employment by a lunatic who came into the office where Borgstrom was working as a draftsman, and began shooting at everyone present because he had been discharged by the company and had been involved in a dispute with respect to the amount of wages due him. In setting aside an award of compensation, the court stated, "We cannot stretch the law to embrace a case clearly not within the contemplation of the statute."

Any remaining doubt as to the principles governing cases of this character has been removed by our recent decision in *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294. We pointed out that, in a long line of cases, this court has held injuries to or death of an employee sustained as the result of an assault upon him having no connection with the employment are not compensable, even though the employee was at the time performing duties "in the course of his employment." Here, as in the *Chicago Hardware Foundry case,* the two employees had no argument over the work or the manner in which it was being performed and neither was the superior over the other in their employment.

In the present case, the record contains no evidence showing that the injury originated in any risk peculiar to the nature of the employment. Evidence tending to disclose a causal connection between the conditions under which defendant in error's work was being done and his injury is lacking. Accepting, as true, defendant in error's testimony that he and Avila were good friends, and that Avila's assault upon him came as a complete surprise, the reason for the attack becomes wholly a matter of conjec-

338

ture. An employer covered by the Workmen's Compensation Act is not an insurer of the safety of his employees at all times during the period of employment. (*Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 374 Ill. 461.) Nor can liability under the statute rest upon imagination or speculation, or upon a choice between two views equally compatible with the evidence. (*Mirific Products Co.* v. *Industrial Com.* 356 Ill. 645.) Manifestly, an award of compensation cannot rest upon sheer speculation that an injury inflicted by a fellow employee was connected with the work in which they were engaged. The hazard of being suddenly attacked by a fellow employee for no known reason was neither incidental nor peculiar to defendant in error's employment but was, instead, a risk incidental to the general public. This being so, no legitimate basis exists for a conclusion that a causal relation obtained between the employment and the injury.

The judgment of the circuit court of Cook county is reversed and the cause is remanded, with directions to set aside the award of the Industrial Commission.

*Reversed and remanded, with directions.*