(No. 34808.—

Hydro-Line Manufacturing Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Darwin B. Brenbarger, Defendant in Error.)

*Opinion filed November 26, 1958.*

FOLTZ, HAYE & KEEGAN, of Rockford, (THOMAS A. KEEGAN, of counsel,) for plaintiff in error.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case poses the question of whether the injuries of Darwin Brenbarger, herein called respondent, arose out of and in the course of his employment. The arbitrator found they did not, but his decision was reversed by the Industrial Commission which entered an award for temporary total disability and for permanent loss of use of 20 per cent of the right leg. On writ of *certiorari,* the circuit court of Winnebago County affirmed the Industrial Commission and we allowed the petition for writ of error.

There is no dispute concerning the material facts. Respondent, age 19, was employed by Hydro-Line Manufacturing Co. as a tester. For about three weeks prior to April 6, 1956, he, and other employees, had practiced softball in a vacant lot adjacent to the Hydro-Line plant. On April 5, 1956, he saw a notice on the bulletin board signed by C. J. McCain, a foreman, which, according to respondent, stated: "that anyone wishing to participate in baseball games it was going to sponsor, by Hydro-Line, sign up their name on the list." Respondent signed the notice and on the following day was injured during the lunch hour, while batting out fly balls. The bat was furnished by one of the employees, and several fellow employees contributed toward the purchase of the baseball. At the time, they were playing in the aforementioned vacant lot, had no captain or leader, but the respondent stated that the foreman, McCain, was "supervising in a form." However, no team was ever organized.

It appears from the record that McCain and another employee were interested in forming a baseball team, and had spoken to the president of Hydro-Line Manufacturing Co. who offered no objections to the plan and agreed to buy the equipment when the team was organized. However, at the time of respondent's injury, no equipment had been purchased by Hydro-Line. The organization of the team and when and where it would play, if at all, had been left to the determination of the employees.

In order for respondent to recover under the Workmen's Compensation Act, (Ill. Rev. Stat. 1957, chap. 48, pars. 138.1-138.28) he must prove, either by direct evidence or by evidence from which such inference can be fairly and reasonably drawn, that his injury arose out of and in the course of his employment. (*Corn Products Refining Co.* v. *Industrial Com.* 6 Ill.2d 439; *Le Tourneau, Inc.* v. *Industrial Com.* 396 Ill. 435.) On this question the findings of fact of the Industrial Commission are conclusive upon this court unless manifestly against the weight of the evidence, but its legal conclusions based upon such findings are subject to review. (*Jewel Tea Co.* v. *Industrial Com.* 6 Ill.2d 304; *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) Since the evidence is uncontroverted, we are therefore presented with a question of law—whether such evidence, together with the legitimate inferences drawn therefrom, is sufficient to prove that respondent's injury arose out of and in the course of his employment. *Hill-Luthy Co.* v. *Industrial Com.* 411 Ill. 201; *Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330.

As a general principle, an injury "arises out of" employment when there is apparent to the rational mind a causal connection between the employment and the accident, and is "in the course of" the employment when it occurs while the employee is at work or while engaging in an activity reasonably incidental to his work. (*Christian* v. *Chicago & Illinois Midland Railway Co.* 412 Ill. 171; *Hill-*

*Luthy Co.* v. *Industrial Com.* 411 Ill. 201; *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *Board of Education* v. *Industrial Com.* 321 Ill. 23; *United States Fuel Co.* v. *Industrial Com.* 310 Ill. 85; *Chicago, Wilmington and Franklin Coal Co.* v. *Industrial Com.* 303 Ill. 540; *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) While these general principles are relatively simple, their application to the varying factual situations which are presented to the commission and the courts constitute a complex phase of the judicial process.

In *Jewel Tea Co.* v. *Industrial Com.* 6 Ill.2d 304, we recently applied these principles to a claim for an injury occurring while the claimant was participating in company sponsored athletics, and held that the employee was entitled to compensation. In that case, which we regarded as one of first impression in Illinois, a league of 15 teams had been organized from among the employees of the company's 153 Chicago stores and the claimant was injured while participating in a league softball game. Each team was named after a district manager of employer. Such manager appointed a captain, who in turn recruited employees to make up the team. The company supplied balls, bats, and shirts bearing the company name and emblem, and provided trophies. The league rules and schedules were arranged and adopted at an annual dinner meeting attended by the company personnel chief and paid for by the company, and the games were publicized over a company radio station and in company publications. We reviewed applicable cases from other jurisdictions with varying factual situations and found that an award of compensation was dependent upon the degree of employer organization, supervision, pressure, actual or inferred, and the benefit derived by the employer from the particular recreational activity. We determined the essential inquiry to be whether the employer could be deemed to sustain a direct benefit from the recreational activity so that it could be regarded as

an incident to the employment. Upon these facts, we found that the activity involved was incidental to the employment.

The qualitative and quantitative nature of this inquiry can be illustrated by two recent decisions of the New York Court of Appeals, both involving injuries occurring to an employee while playing on a company baseball team. In *Wilson* v. *General Motors Corp.* 298 N.Y. 468 (1949), 84 N.E.2d 781, the employees organized a 14-team softball league for their own recreation and played games off the company premises on their own time. The employer paid for and furnished storage facilities for the equipment, and permitted conferences in relation to the league on the company properties on company time. The court denied compensation and held that the business advantage to the employer was too tenuous, and the financial aid too slight to convert the personal recreation of the employees into an incident of their employment. In *Tedesco* v. *General Electric Co.* 305 N.Y. 544 (1953), 114 N.E.2d 33, the employer furnished the employees' athletic association with a club house, subsidized its activities over a nine-year period to the extent of $55,277, appointed a representative to the board of the athletic association, obtained publicity in daily newspapers, and closed down the athletic association facilities during a strike. The court awarded compensation, found that the recreational activities were carried out for the purpose of providing an integrated plan of recreational activity for company employees which was dominated by and beneficial to the employer, and inseparably connected with the employment. Similar distinctions are exemplified by the cases from other jurisdictions cited in *Jewel Tea.*

In this type of case, the question before us is one of degree and is resolved by determining whether the relative extent of employer domination, control, supervision and benefit is sufficient to deem the activity an incident of employment. In all questions involving matters of degree, the adjudication of rights in an individual case is relatively

simple where the factual circumstances are at either extreme of the penumbral area and becomes progressively more difficult as the facts approach its median. (See Greenfield, "Injuries Arising Out of Employment," 1957, Ill. L. Forum, 191, 212-213, praising, and 1 Angerstein, Workmen's Compensation, 1958 pocket part, sec. 494.5, criticizing *Jewel Tea Co.* v. *Industrial Com.* 6 Ill.2d 304.) However, the facts before the court present no such difficulty. The employer offered neither supervision nor domination over the recreational activity in question, nor did it encourage or pressure employees to play baseball. No team was ever organized and no equipment was ever furnished. The most that can be said is that the employer did not voice opposition to the organization of a baseball team, and tentatively agreed to contribute some equipment if a team was organized. This minimal relationship to the activity is far less than that existing in *Jewel Tea* or in *Tedesco,* where compensation was allowed.

It is undisputed in the case at bar that certain employees, during the lunch hour period for three weeks prior to April 6, had been batting out fly balls on a vacant lot adjacent to the plant and that such exercise or practice was in no way incidental to their employment. We do not believe that the posting of the notice, signed by a company foreman, requesting employees to sign up for a team, *ipso facto,* converted an activity, which theretofore had been purely a personal diversion, into an incident of employment.

We find that the facts of the present case are totally insufficient to show any appreciable degree of employer control, supervision, encouragement or benefit. We therefore find as a matter of law that respondent's injury did not arise out of and in the course of his employment. The judgment of the trial court must accordingly be reversed.

*Judgment reversed.*